UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY FRANCIS AND CALVIN CITTADINO | NUMBER |
| VERSUS | |
| JAMES LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND THE COMMITTEE ON PAROLE OF THE LOUISIANA BOARD OF PARDONS | JUDGE |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Complaint of Jerry Francis and Calvin Cittadino, citizens of the State of Louisiana and currently domiciled in Louisiana State Penitentiary, Parish of West Feliciana, respectfully represents:

1.

Named defendants herein are:

A. James Leblanc, Secretary of the Louisiana Department of Public Safety and Corrections who is sued herein in his official capacity and

B. The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza.

2

Jurisdiction arises herein under 28 USC Section 1331 in that this is a suit seeking declarative and injunctive relief for violation of civil rights pursuant to 42 USC Section 1983, 42 USC Section 1988 and supplemental jurisdiction under 28 USC Section 1367.

Set forth below are plaintiffs' claims alleging violation of Due Process, *ex post facto* application of law and of a liberty interest cognizable under the United States Constitution and created by the State of Louisiana.

3.

Venue is proper in the Middle district of Louisiana under 28 USC 1391 as the defendant, James Leblanc, sued herein in his official capacity, is the Secretary of the Louisiana Department of Corrections (DPSC) who is domiciled within the Middle District. The Committee on Parole is likewise domiciled in the Parish of East Baton Rouge. To the extent that the proper defendant may be the State of Louisiana, the seat of state government is within the Middle District.

**I.  Plaintiffs**

4.

Calvin Cittadino is a prisoner of the State of Louisiana after sentencing for a conviction for Armed Robbery. Calvin has exhausted his administrative remedies as to all issues raised herein. See LSP ARP 2013-2624.

5.

Following resentencing in 2008, Calvin Cittadino was given a parole eligibility date (PED) of August 12, 2012.

6.

On April 19, 2012 Calvin was brought before the Parole Board for his initial parole hearing and was denied parole.

7.

Under the rules of the Louisiana Parole Board (Now the Committee on Parole), Calvin reapplied and was set for hearing on August 15, 2013.

8.

The August 15, 2013 hearing did not occur for Calvin as he was removed from the parole docket on or about August 13, 2013.  Other cases were in fact heard that day.

9.

Calvin Cittadino has accomplished all of the pre-requisites for parole release such as remaining write-up free and being a class A trusty.

10.

Jerry Francis was incarcerated June 16, 1976 for armed robbery (two counts) and was sentenced consecutively to 198 years.  Jerry Francis has exhausted his administrative remedies as to all issues raised herein.  See LSP ARP 2013-2625.

11.

Francis was initially assigned an Act 60 of 1987 PED.

12.

Following enactment of Act 790 of 1990, Francis' master record was inscribed with a PED of October 12, 2003.

13.

Jerry Francis had a parole hearing in 2003 and was denied.

14.

Jerry reapplied for a hearing and was granted a hearing which was set for August 13, 2013.

15.

Two days before Jerry's hearing, he was removed from the docket and was denied a parole hearing on August 13, 2013.

**II. Louisiana Geriatric parole and History of Act 790**

16.

By the mid-1980s several events concurrently required a change in the parole eligibility for armed robbery offenders.   First, the entire prison system was under federal consent decree with mandatory population "caps."  The effect of the *Hayes Williams v. Mckeithen* decree was to place a premium on prison bed space[1].  A second factor was the recognition that Angola was rapidly filling up with lifers as a result of sentencing changes that followed the abolition of the death penalty in *Furman v. Georgia* in 1972.   Finally, the building spree that Louisiana undertook following the affirmance of the *Hayes Williams* judgment was coming to an end and there was no more bed space to be had. By the mid-1980s, Louisiana prisons were becoming overcrowded and a significant cause of the overcrowding was from an increase in the number of inmates serving very long sentences. The Louisiana Sentencing Commission and the Governor's Task Force on Overcrowding proposed a series of legislative measures to help alleviate the overcrowding and to help lower the prison population.

17.

In 1987 the Governor's Task Force on Prison Overcrowding offered a package of legislative solutions.

---

[1] Docket number 71-98 on the Docket of the United States District Court, Middle District of Louisiana,

18.

One such legislative solution was proposed by Representative Bruce Lynn in the form of House Bill 533 which became Act 60 of 1987.[2]

19.

Act 60 amended the provisions of R.S. 15:574.4 to read:

> Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years in actual custody and upon reaching the age of sixty. This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years.

20.

Act 60 was called the "geriatric parole" provision and "It also expressly applies and is only relevant to cases of offenders who are serving very long sentences or are otherwise prohibited by law from parole eligibility." See *Joseph, Developments in the law 1986-1987 – Criminal Procedure, 48 La. L. Rev. 257 (1987.)*

---

[2] Mr. Lynn became Secretary of the Louisiana Department of Corrections the following year.

21.

The express language of Act 60 makes it clear that the act is designed to ameliorate the harsh sentencing provisions of LA R.S. 14:64:

1.      The Act commences with "Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary" which refers specifically to the previous prohibition of armed robbery parole eligibility.

2.      "With or without parole eligibility" language makes clear that except as later modified internally in Act 60, anyone serving a sentence of a fixed term without parole eligibility is now eligible upon meeting the age and length of sentence criteria.

3.      The requirement is that of a fixed term (no life sentences is expressly mentioned.) Had the legislature desired to continue to exclude armed robbers, the exclusion would have been inserted at this juncture in the Act.

22.

In the above cited Law Review Article, Professor Joseph explains the effects of Act 60 by using an example of armed robbery, stating:

> If an armed robber is sentenced to 198 years as a multiple offender without benefit of parole, under the 'geriatric' parole provisions he will nevertheless ('Notwithstanding . . . any other law to the contrary . . .') becomes eligible when he has served twenty years and has reached the age of sixty. If sentenced at age forty-five, he will have to serve until he is sixty-five to complete the twenty years. On the other hand, if sentenced at age thirty he will have to serve thirty years before reaching age sixty.

23.

After Act 60 of 1987, the Department of Public Safety and Corrections updated the master prison record of Jerry Francis to reflect parole eligibility after having served twenty years and achieving age 60.

24.

DPSC also updated the master records of all armed robber offenders in DPSC custody who had a sentence of thirty years or more to reflect parole eligibility after having served twenty years and achieving age 60.

25.

Since enactment, these provisions have been called "geriatric parole," "old timers parole," or since 1990, "20/45" parole.  For purposes of this Complaint, these "20/45" parole eligible inmates convicted of armed robbery will be referred to as "parole eligible armed robbery offenders."

26.

In 1990, Act 790 of the Louisiana Legislature became law and the DPSC amended and corrected the master prison records of all parole eligible armed robbery offenders with a sentence of thirty years or more to reflect a parole eligibility date (PED) after having served twenty years and having reached age forty-five.

27.

Jerry Francis' master record was amended after passage of Act 790 to reflect a PED after having served twenty years and having reached age forty-five.

28.

Calvin Cittadino's master record always reflected a PED after having served twenty years and having reached age forty-five.

29.

Commencing after enactment of Act 60 in 1987 and continuing until August 2013, the Department of Public Safety and Corrections has maintained a master prison record for all parole eligible armed robbery offenders that reflects the PED when the offender meets the criteria and is eligible for a parole hearing.

30.

Commencing soon after enactment of Act 60, the Louisiana Board of Parole held hearings for armed robbery offenders that had a PED assigned as a result of Act 60.

31.

Commencing soon after enactment of Act 790, the Louisiana Board of Parole held hearings for armed robbery offenders that had a PED assigned as a result of Act 790.

32.

Since 1987, numerous armed robbery offenders have been granted parole under the provisions of Act 60 and Act 790 and many more have received hearings but have not yet achieved parole.

33.

In 1995, the legislature enacted Act 1099 (effective January 1, 1997) requiring offenders convicted and sentenced for certain enumerated offenses to serve eighty-five percent (85%) of the imposed sentence.

34.

After January 1, 1997, parole eligible armed robbery offenders have a PED that reflects the 85% mark on their sentence.

35.

In 2008, the legislature amended LA R.S. 15:574.4 to prohibit armed robbers from parole eligibility.

36.

No armed robber with an offense date after August 15, 2008 has a PED.

37.

Thus, the statutory scheme for parole eligibility for armed robbers with conviction dates from 1987 through 2008 can be summarized as:

a.	1987-1990 --   30 year or greater sentence, age 60 and having served 20 years becomes parole eligible.  PED assigned after enactment or if convicted after 1987, upon calculation of time by the DPSC.

b.	1990 -1997 --   30 year or greater sentence, age 45 and having served 20 years becomes parole eligible.  PED assigned after enactment or if convicted after 1987, upon calculation of time by the DPSC.

c.	1997  to conviction date before August 15, 2008 - 30 year or greater sentence, age 45 and having served 20 years becomes parole eligible AFTER having served 85% of sentence.  PED assigned after upon calculation of time by the DPSC.

d.	On or after August 15, 2008 – armed robbery convicts are no longer eligible if convicted on or after August 15, 2008.

38.

To be clear, after the legislation effective August 15, 2008, those armed robbery offenders with offense dates **prior** to August 15, 2008 maintained the PED on their master record.

39.

On information and belief, there are currently hundreds of convicted armed robbery inmates in the State of Louisiana with offense dates before January 1, 1997 who have PED entered on their master prison record.

40.

From 1987 through July 18, 2013, hundreds of armed robbery inmates actually received hearings as they reached the requisite years served and met the age requirement of La. R.S. 15:574.4.

41.

Of the armed robbery offenders that received an Act 60 or Act 790 hearing, no less than 153 of these armed robbery inmates achieved release on parole.

42.

DPSC policy reflects the statutory scheme set forth above. DPSC regulation B-04-004 (8) states:

> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.

      1) The above provision does not apply to those offenders who are serving a life sentence.
      2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the offense was committed on or after August 15, 2008.

43.

B-04-004 mandates a PED for armed robbery upon reaching age 45 and having served 20 years.

44.

Because of the inscribing of the master record with PED, the regulation B-04-004 and the actual practice of the DPSC and the Parole Board (Now the Committee on Parole) a liberty interest has been created. The expectation of the population of armed robbery offenders whose offense dates are before January 1, 1997 is that they will receive a fair parole hearing upon reaching the "20/45" PED.

45.

Should the parole eligible armed robbery offender not make parole, the prisoner may reapply every two years.

46.

Many armed robbery offenders have made parole after reapplication and at subsequent hearings.

47.

After twenty years of armed robbery prisoners being parole eligible under the DPSC rules, a month or so hiatus in armed robbery paroles occurred due to short lived litigation as to whether Act 790 covered armed robbery cases.

48.

The DPSC made certain agreements with counsel for plaintiff in litigation entitled *David Tell v. Richard Stalder, et al.,* Number 541,059 Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

49.

One such agreement made in the "Tell" case was that the outcome of the "Tell" litigation would apply to all prisoners with armed robbery convictions.

50.

Another agreement reached in the "Tell" litigation was that master records would reflect the Act 790 dates for armed robbery inmates.

51.

Also, it was agreed in the "Tell" litigation that no appeal would be taken from the State District Court ruling in *Tell* and that *Tell* would go final.

52.

The agreement of the DPSC to accept as final the results of the *David Tell* litigation further set up an expectation that the "20/45" practice would continue.

53.

A DPSC memorandum to all wardens was issued by Secretary Richard Stalder on May 8, 2008 stating: "Therefore, those persons convicted of Armed Robbery will again be included in the class of inmates eligible for parole consideration…."

54.

This letter from Stalder reinforces an enforceable liberty interest in favor of the parole eligible armed robbery offenders.

**Current actions of DPSC**

55.

In 2011, a non-reported case entitled *Billard v. Rhonda Kling*, et al, Number 2010 CA 0352 on the Docket of the Louisiana Court of Appeal, First Circuit was decided.

56.

Unrelated to the decision in the case, the Court, in dicta, implied that armed robbers were never parole eligible.

57.

The dicta is contrary to almost thirty years of actual practice by the DPSC as the DPSC has placed PEDs on master records of parole eligible armed robbery offenders since 1987.

58.

The *Billard* dicta is contrary to the actual practice of the Louisiana Parole Board (now Committee on Parole) as the Parole Board has continuously had parole hearings for parole eligible armed robbery offenders since 1987.

59.

The *Billard* dicta is contrary to the actual practice of the Louisiana Parole Board (now Committee on Parole) as the Parole Board has, following a hearing, actually paroled and released on supervision **hundreds** of parole eligible armed robbery offenders.

60.

DPSC was a party to *Billard* and was, of course, aware of the dicta.  The DPSC chose to ignore the erroneous dicta and maintained the PED on parole eligible armed robbery offenders subsequent to rendition in *Billard*.

61.

The Committee on Parole and predecessor, Parole Board, held hearings and granted numerous paroles to parole eligible armed robbery offenders during the period from rendition of the *Billard* case though August 2013.

62.

About August 13, 2013 the Committee on Parole inexplicably removed armed robbery offenders from parole dockets.

63.

DPSC and the Committee on Parole have not articulated any legal reason how or why a 2011 decision (assuming that the *Billard* dicta is the reason that hearings were discontinued) that is not published is able to alter the established PED rights of plaintiffs.

64.

From February 2011 to August 2013, the DPSC ignored the erroneous language in *Billard* and:

  a.  Continued to maintain an Act 790 "20/45" PED on the master record of all armed robbery offenders with offense dates **prior** to January 1, 1997.

b.  Continued to maintain an Act 790 PED on the master record of all armed robbery offenders with offense dates **after** January 1, 1997 when the offender met the "20/45" criteria AND had completed 85% of the sentence.

65.

From February 2011 to August 2013, the Committee on Parole scheduled initial parole hearings for parole eligible armed robbery offenders who had reached the PED.

66.

Calvin Cittadino was one such offender who was initially scheduled in 2012 by the Committee on Parole.

67.

The Committee on Parole scheduled "re-hearings" for parole eligible armed robbery offenders who, not paroled at an initial hearing, reapplied for a hearing.

68.

Jerry Francis was granted a re-hearing By the Committee on Parole in the year 2013 and was scheduled for hearing August 15, 2013.

69.

Following rendition of *Billard*, the DPSC maintained a written DPSC policy, B-04-004, that expressly called for parole eligibility for armed robbery offenders.

70.

Commencing in or about August 13, 2013, the DPSC removed parole eligible armed robbery offenders from the parole dockets and until the ARP responses received October 17, 2013 provided no written or logical explanation or notice for the removal.

71.

Both plaintiffs were removed from a scheduled parole docket only two days before their hearing and continue to be incarcerated by the State of Louisiana with no hearing date scheduled.

72.

The DPSC through James Leblanc, Secretary, is responsible for establishing a PED and causing the PED to be placed on the offender's master record.

73.

The Committee on Parole is responsible for actually scheduling a hearing or a re-hearing for an offender.

74.

*Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) sets forth how a liberty interest such as in a PED is created stating that the liberty interest "may arise from an expectation or interest created by state laws or policies…." Also see *Swarthout v. Cooke*, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) assuming a liberty interest in parole eligibility.

75.

A liberty interest has been created here in favor of plaintiffs.

76.

The Liberty interest created is that, upon fulfilling the requirements of Act 790 (which both plaintiffs have done), that the parole eligible armed robbery offender **will be**

given a hearing.  This liberty interest is protected by the 14th Amendment to the United States Constitution and cannot be arbitrarily withdrawn.

77.

Defendants have violated plaintiffs' rights under 14th Amendment to the United States Constitution by cancelling and refusing to reschedule parole hearings.

78.

Additionally, as a matter of substantive Due Process, the DPSC may not *ex post facto* apply dicta from a 2011 unreported case to offenders who have had a PED for many years prior to that decision, had hearings and who were anticipating hearings.

**Declaratory And Injunctive Relief Sought**

79.

Plaintiffs seek a declaratory judgment as to both defendants adjudicating the rights of the plaintiffs and ordering:

1. That the plaintiffs remain parole eligible and,
2. That plaintiffs be restored to the next Angola parole docket and have their cases heard.

80.

Plaintiffs also seek an injunction ordering the DPSC and the Committee on Parole to re-set each plaintiff on the parole docket for hearing.

81.

Plaintiffs have and will continue to suffer irreparable injury which cannot be compensated in money in that they remain incarcerated without a parole hearing and have suffered the loss of opportunity to be granted parole and supervised release thereafter.

82.

Plaintiffs have retained counsel to prosecute this matter and are entitled to an award of attorney fees and costs as prevailing party under 42 USC Section 1988.

**WHEREFORE COMPLAINTANTS, JERRY FRANCIS AND CALVIN CITTADINO, PRAY** that there be judgment herein in their favor and against James Leblanc, Secretary of the Louisiana Department of Public Safety and Corrections in his official capacity and The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza decreeing that:

1. Parole eligibility is maintained as to each plaintiff under Louisiana Act 790 of 1990.
2. Each plaintiff is restored to the parole docket as promptly as possible and thereafter heard.
3. That a Preliminary and thereafter permanent injunction issue herein ordering the DPSC to maintain a PED for each plaintiff and ordering the Louisiana Committee on Parole to hold a hearing as to each plaintiff.

**COMPLAINTANTS, JERRY FRANCIS AND CALVIN CITTADINO, FURTHER PRAY** for all equitable relief as may be allowed by law**.**

**COMPLAINTANTS, JERRY FRANCIS AND CALVIN CITTADINO, FURTHER PRAY** for an award of attorney fees pursuant to 42 USC Section 1988 and for all costs herein.

BY ATTORNEY:

_____
Keith B. Nordyke, LSBA 08556  . Trial Attorney
**NORDYKE AND GREENFIELD, LLC**
427 Mayflower Street
Baton Rouge, Louisiana 70802
(225) 383-1601
knordyke@nglawllc.com


_____
Carol J. Greenfield, LSBA 06338
**NORDYKE AND GREENFIELD, LLC**
427 Mayflower Street
Baton Rouge, Louisiana 70802
(225) 383-1601
caroljgreenfield@gmail.com