UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JERRY FRANCIS AND CALVIN CITTADINO    NUMBER  3:13-cv-00691-JJB-RLB

VERSUS

JAMES LEBLANC, SECRETARY OF
THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS
AND THE COMMITTEE ON PAROLE OF THE
LOUISIANA BOARD OF PARDONS

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## Stipulations

Now come Jerry Francis, Calvin Cittadino, James M. Le Blanc, Secretary, Louisiana Department of Public Safety and Corrections and The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza, who stipulate as follows:

1.

James M. Le Blanc is the Secretary of the Louisiana Department of Public Safety and Corrections (DPSC) and is sued herein in his official capacity.

2.

The DPSC is responsible under Louisiana law for determining when an offender is eligible for parole consideration.

3.

Upon admission into the DPSC, an offender determined to be eligible for parole consideration is given a Parole Eligibility Date (PED) reflecting the earliest date on which the offender becomes eligible for consideration for release on parole.

4.

The Committee on Parole of the Louisiana Board of Pardons through the chair, Sheryl Ranatza is an entity capable of being sued.

5.

The Committee on Parole, although not responsible for initial determination of eligibility for parole consideration, is responsible for placing offenders on the parole docket on or before their PED and thereafter at intervals set forth in the regulations of the Committee.

6.

Calvin Cittadino is a prisoner of the State of Louisiana having been sentenced to DPSC for a conviction for Armed Robbery.  Calvin Cittadino has exhausted his administrative remedies as to all issues raised herein.  See LSP ARP 2013-2624.

7.

Following his resentencing in 2008, Calvin Cittadino was given a parole eligibility date (PED) of August 12, 2012.

8.

On April 19, 2012 Calvin was brought before the Parole Board for his initial parole hearing and was denied parole.  The master prison record is made an exhibit in this matter.

9.

Pursuant to the rules of the Louisiana Parole Board (now the Committee on Parole), Calvin Cittadino was eligible to reapply for parole consideration and was granted a subsequent parole hearing which was set for August 15, 2013.

10.

The August 15, 2013 hearing did not occur for Calvin Cittadino as he was removed from the parole hearing docket on or about August 13, 2013.

11.

Nothing other than his status as an armed robbery offender caused the removal of Calvin Cittadino from the parole hearing docket.

12.

Jerry Francis was convicted of two counts of Armed Robbery and was incarcerated June 16, 1976 and was sentenced to two consecutive 99 year sentences (198 years). Jerry Francis has exhausted his administrative remedies as to all issues raised herein.  See LSP ARP 2013-2625.

13.

Jerry Francis was initially assigned a PED pursuant to Act 60 of 1987.

14.

 Following enactment of Act 790 of 1990, Jerry Francis' master record was inscribed with a PED of October 12, 2003.  The master record is made an exhibit in this matter.

15.

Jerry Francis had a parole hearing in 2003 and was denied parole.

16.

Pursuant to the rules of the Louisiana Parole Board (now the Committee on Parole), Jerry Francis was eligible to re-apply for parole consideration and was granted a subsequent parole hearing which was set for hearing on August 13, 2013.

17.

Prior to his parole hearing date scheduled for August 13, 2013, Jerry Francis was removed from the docket and was denied a parole hearing on August 13, 2013.

18.

Nothing other than his status as an armed robbery offender caused the removal of Jerry Francis from the parole hearing docket.

19.

Jurisdiction is established under 28 USC Section 1331 in that this is a suit seeking declarative and injunctive relief for violation of civil rights pursuant to 42 USC Section 1983, 42 USC Section 1988 and supplemental jurisdiction under 28 USC Section 1367. Plaintiffs' claims alleging violation of Due Process, *ex post facto* application of law and of a liberty interest are cognizable under the United States Constitution and created by the State of Louisiana.

20.

Venue is proper in the Middle District of Louisiana under 28 USC 1391 as the defendant, James M. Le Blanc, sued herein in his official capacity, is the Secretary of the Louisiana Department of Corrections (DPSC) who is domiciled within the Middle District.  The Committee on Parole is likewise domiciled in the Parish of East Baton

Rouge.  To the extent that the proper defendant may be the State of Louisiana, the seat of state government is within the Middle District.

21.

By the mid-1980s several events concurrently required a change in the parole eligibility for some previously ineligible offenders.

22.

By the mid-1980s, Louisiana prisons were reaching capacity from an increase in the number of inmates serving long sentences.

23.

As a result of the consent decree in *Hayes Williams v. McKeithen,* Number 71-98 on the Docket of the United States District Court, Middle District of Louisiana, the entire prison system was under federal consent decree with mandatory population "caps."

24.

The Louisiana Sentencing Commission and the Governor's Task Force on Overcrowding proposed a series of legislative measures to help alleviate the overcrowding and to help lower the prison population.

25.

In 1987 the Governor's Task Force on Prison Overcrowding offered a package of legislative solutions.

26.

One such legislative solution was proposed by Representative Bruce Lynn in the form of House Bill 533 which became Act 60 of 1987.

27.

Act 60 amended the provisions of R.S. 15:574.4 to read:

> Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years in actual custody and upon reaching the age of sixty. This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years.

28.

Act 60 was called the "geriatric parole" provision and its scope was described as follows: "It also expressly applies and is only relevant to cases of offenders who are serving very long sentences or are otherwise prohibited by law from parole eligibility." See *Joseph, Developments in the law 1986-1987 – Criminal Procedure, 48 La. L. Rev. 257 (1987.)*

29.

The Act commences with "Notwithstanding the provisions of Paragraph (A)(1) or any other law to the contrary."

30.

In the above cited law review article, Professor Joseph explains the effects of Act 60 by using an example of armed robbery, stating:

> If an armed robber is sentenced to 198 years as a multiple offender without benefit of parole, under the 'geriatric' parole

>provisions he will nevertheless ('Notwithstanding . . . any other law to the contrary . . .') becomes eligible when he has served twenty years and has reached the age of sixty. If sentenced at age forty-five, he will have to serve until he is sixty-five to complete the twenty years. On the other hand, if sentenced at age thirty he will have to serve thirty years before reaching age sixty.

31.

Bruce Lynn, the author of Act 60, became Secretary of the DOC several months following the effective date of Act 60.

32.

Following the appointment of Bruce Lynn as Secretary of DPSC, the master prison records of offenders with armed robbery convictions and with sentences of thirty years or greater were adjusted to reflect a PED after having served twenty years and having reached age 60.

33.

After Act 60 of 1987, DPSC adjusted the master prison record of Jerry Francis to reflect eligibility for parole consideration after having served twenty years and achieving age 60.

34.

DPSC also adjusted the master records of all armed robbery offenders in DPSC custody who had a sentence of thirty years or more to reflect eligibility for parole consideration after having served twenty years and achieving age 60.

35.

Since enactment, these provisions have been called "geriatric parole," "old timers parole," or since 1990, "20/45" parole.

36.

In 1990, Act 790 of the Louisiana Legislature became law. The DPSC adjusted the master prison records of all parole eligible armed robbery offenders with a sentence of thirty years or more to reflect a parole eligibility date (PED) after having served twenty years and having reached age forty-five.

37.

Jerry Francis' master record was adjusted after passage of Act 790 to reflect a PED after having served twenty years and having reached age forty-five.

38.

Calvin Cittadino's master record reflected a PED when he had served twenty years and having reached age forty-five.

39.

Commencing after enactment of Act 60 in 1987, and continuing until August 2013, DPSC has maintained a master prison record for offenders convicted of Armed Robbery and eligible for parole consideration reflecting a PED when the offender meets the statutory criteria and is eligible for a parole hearing.

40.

Following the enactment of Act 60, the Louisiana Board of Parole conducted hearings for armed robbery offenders who had a PED assigned as a result of Act 60.

41.

Following the enactment of Act 790, the Louisiana Board of Parole conducted parole hearings for armed robbery offenders who had a PED assigned as a result of Act 790 and who were eligible for parole consideration.

42.

Since 1987, armed robbery offenders have been granted parole under the provisions of Act 60 and Act 790 and have received hearings.

43.

Since 1987, armed robbery offenders have been granted rehearings following the initial denial of parole. Armed robbery offenders who have been granted rehearings have subsequently been granted release on parole.

45

In 1995, the Legislature enacted Act 1099 (effective January 1, 1997) requiring offenders convicted and sentenced for certain enumerated offenses to serve eighty-five percent (85%) of the imposed sentence.

46.

Armed robbery offenders with a sentence of thirty years or more and offense dates between January 1, 1997 and August 15, 2008 have a PED that reflects the 85% mark on their sentence, service of twenty years and reaching age 45.

47.

In 2008, the Legislature amended LA R.S. 15:574.4 to prohibit offenders convicted of Armed Robbery from eligibility for parole consideration.

48.

No offender convicted of Armed Robbery with an offense date after August 15, 2008 is eligible for parole consideration.

49.

Thus, the manner in which the DPSC has treated eligibility for parole consideration for offenders convicted of Armed Robbery convicted from 1987 through 2008 can be summarized as:

a.	1987-1990 --  30 year or greater sentence, age 60 and having served 20 years becomes eligible for parole consideration.  PED assigned after enactment or if convicted after 1987, upon calculation of time by the DPSC.

b.	1990 -1997 --  30 year or greater sentence, age 45 and having served 20 years becomes eligible for parole consideration.  PED assigned after enactment or if convicted after 1987, upon calculation of time by the DPSC.

c.	1997  to conviction date before August 15, 2008 - 30 year or greater sentence, age 45 and having served 20 years becomes eligible for parole consideration AFTER having served 85% of sentence.  PED assigned after upon calculation of time by the DPSC.

d.	On or after August 15, 2008 – offenders convicted of Armed Robbery are no longer eligible for parole consideration if convicted on or after August 15, 2008.

50.

After the legislation effective August 15, 2008, those armed robbery offenders with offense dates **prior** to August 15, 2008 maintained a PED on their master record.

51.

There are approximately 7 offenders convicted of armed robbery who have been granted parole by the Parole Committee and have not reached their release dates.

52.

There are currently 181 offenders convicted of armed robbery who were granted release on parole and who are currently under active supervision by the Department through the Division of Probation and Parole.

53.

Since enactment of Act 60 in 1987, approximately 305 offenders convicted of armed robbery have been granted parole and released on supervision.  Currently there are approximately 462 offenders convicted of Armed Robbery that have a PED on their master record who are currently in the physical custody of the Department.

54.

DPSC policy reflects the statutory scheme set forth above.  DPSC regulation B-04-004 (8) states:

> F. Notwithstanding any other law to the contrary, unless eligible for parole at an earlier date, an offender sentenced for a term of imprisonment with or without benefit of parole for 30 years or more shall be eligible for parole consideration upon serving at least 20 years in actual custody and upon reaching the age of 45. (Act No. 790 of the 1990 Regular Session). Note: Those offenders convicted of a crime of violence on or after January 1, 1997 must also have served at least 85% of the sentence imposed.
> 1) The above provision does not apply to those offenders who are serving a life sentence.
> 2) Pursuant to Act No. 624 of the 2008 Regular Session, the above provision does not apply to those offenders convicted of La. R.S. 14:64 when the offense was committed on or after August 15, 2008.

55.

B-04-004 does not exclude armed robbery offenders.

56.

The Louisiana Department of Public Safety and Corrections has in actual practice assigned a PED to armed robbery offenders upon reaching age 45 and having served 20 years if those offenders meet the criteria of Regulation B-04-004.

57.

The expectation of the population of armed robbery offenders whose offense dates are before January 1, 1997 is that they will receive an initial parole hearing upon reaching the "20/45" PED.

58.

Should the armed robbery offender who was considered parole-eligible be denied parole, the offender prisoner may reapply at intervals set by Parole Committee regulation.

59.

Armed robbery offenders may have been granted release on parole supervision following reapplication at subsequent hearings.

60.

The DPSC litigated whether armed robbery offenders were entitled to eligibility for parole consideration in the case entitled *David Tell v. Richard Stalder, et al.,* Number 541,059 Section 8, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.  The ruling in *Tell* is attached as an exhibit.

61.

The Parties agreed that the ruling in the "Tell" litigation would apply to all prisoners convicted of Armed Robbery and similarly situated with David Tell.

62.

The Parties, subsequent to the ruling in the "Tell" litigation agreed that no appeal would be taken from the State District Court ruling in *Tell,* that *Tell* would go final and that master records would reflect the Act 790 dates for offenders convicted of Armed Robbery.

63.

Following the *Tell* decision, a DPSC memorandum to all wardens was issued by Secretary Richard L. Stalder on May 8, 2008 stating: "Therefore, those persons convicted of Armed Robbery will again be included in the class of inmates eligible for parole consideration…."

64.

Since enactment of Act 60 of 1987 and continuing until August 2013, offenders convicted of Armed Robbery have been treated as eligible for parole consideration under Act 60 of 1987 and Act 790 of 1990.

65.

The Committee on Parole and its predecessor, the Louisiana Board of Parole, have held hearings for armed robbery offenders after the enactment of Act 60 of 1987 until August 2013 and numerous armed robbery offenders have been granted parole.

66.

On or about August 13, 2013 the Committee on Parole removed offenders convicted of Armed Robbery from parole hearing dockets.

67.

Both plaintiffs were removed from a scheduled parole hearing docket before their hearing and continue to be incarcerated by the State of Louisiana with no new hearing date scheduled.

68.

From February 25, 2011 through August 2013 approximately sixty three (63) armed robbery offenders were actually heard by the Parole Committee and subsequently granted parole.

69.

The Committee on Parole is responsible for actually scheduling a hearing or a re-hearing for an offender.

70.

The parties agree that any relief granted in this case will apply to all other offenders convicted of Armed Robbery similarly situated and that there is no necessity of applying for class certification.

71.

On or about August 13, 2013, the DPSC and the Committee on Parole removed all Armed Robbery offenders eligible for parole consideration under Act 790 from the Parole Committee hearing dockets because of questions raised as to the policy and practice of the DPSC and Parole Committee and its predecessors since the enactment of Act 60 of 1987 in light of Louisiana Attorney General Opinion Number 08-0120 and

certain language in the case of *Billard v. Rhonda Kling, et al*, Number 2010 CA 0352 (1 Cir. 2011).

        BY ATTORNEY:

_____
Keith B. Nordyke, LSBA 08556 . Trial Attorney
**NORDYKE AND GREENFIELD, LLC**
427 Mayflower Street
Baton Rouge, Louisiana 70802
(225) 383-1601
knordyke@nglawllc.com
**Attorney for plaintiffs**

*/s Carol J. Greenfield*
Carol J. Greenfield, LSBA 06338
**NORDYKE AND GREENFIELD, LLC**
427 Mayflower Street
Baton Rouge, Louisiana 70802
(225) 383-1601
caroljgreenfield@gmail.com
**Attorney for plaintiffs**

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

*/s Patricia H. Wilton*
BY: PATRICIA H. WILTON (#18049)
ASSISTANT ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 94005
BATON ROUGE, LA 70804-9005
TELEPHONE: (225) 326-6002
FACSIMILE: (225) 326-6498

*/s William L. Kline*
William L. Kline, LSBA 17009
General Counsel
**DEPARTMENT OF PUBLIC SAFETY**
 **AND CORRECTIONS**
P.O. Box 94304, Capitol Station
Baton Rouge, La. 70804-9304
Telephone: (225) 342-1890
Facsimile: (225) 342-5338