UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JERRY FRANCIS AND CALVIN CITTADINO

CIVIL ACTION

VERSUS

NO. 13-691-JJB-RLB

JAMES LEBLANC, SECRETARY OF THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS AND THE COMMITTEE ON PAROLE OF THE LOUISIANA BOARD OF PARDONS

**ORDER FOR ORAL ARGUMENT**

This matter is before the court on the Plaintiffs Jerry Francis and Calvin Cittadino's Motion (doc. 5) for Preliminary Injunction. After careful review of the record, this Court finds that oral argument is necessary for it to make its determination. The court will have oral argument on the Plaintiffs' Motion (doc. 5) for Preliminary Injunction on February 3, 2014 at 1:30 p.m. in Courtroom One. The Court is particularly interested in hearing argument regarding the following issues:

1. Is there a substantial federal question in this matter? Both parties suggest that this case is simply about interpreting a state law and not dealing primarily with constitutional claims.[1] Due to the fact that federal courts are courts of limited jurisdiction, it is a fundamental principle that the threshold issue in every case is whether the court has subject matter jurisdiction. *Sarmiento v. Texas Bd. of Veterinary Medical Examiners*, 939 F.2d 1242 (5th Cir. 1991). Consequently, the

[1] In their motion, the plaintiffs make the following assertion: "Plaintiffs suggest that the clear statutory construction of LSA 15:574.4 allows a decision that doesn't require adjudication on constitutional grounds." (Doc. 5-1, p. 18) (emphasis added). Additionally, the defendants' state the following in their opposition: "In conclusion, Defendants submit that the sole issue presented to this Court is whether or not the geriatric or old timers parole provisions of LSA-R.S. 15:574.4(A)(2) apply to those individuals who committed a violation of LSA-R.S. 14:64 before the effective date of Act 624 of 2008." (Doc. 8, p. 5).

court is obliged to examine the basis for subject matter jurisdiction *sua sponte*, if necessary.

2. With regards to the potential issuance of a preliminary injunction, do the plaintiffs have a substantial likelihood of success on the merits regarding their *ex post facto*, deprivation of a liberty interest, and other due process claims?

3. Is there a substantial threat of irreparable injury if the preliminary injunction is not issued?

4. Does the threatened injury if a preliminary injunction is denied outweigh any harm that will result if the injunction is granted?

5. Will the granting of a preliminary injunction disserve the public interest?

6. Is there an *ex post facto* claim applicable to the present matter? The Supreme Court in *Rogers v. Tennessee* appears to provide that in looking at the potential retroactive application of a judicial decree, it is actually a due process issue and not *ex post facto*.[2] As there is no apparent contention by the defendants that Act 624 of 2008 was

[2] In *Rogers*, the Supreme Court stated:

> In support of this claim, petitioner takes *Bouie* to stand for the proposition that "[i]n evaluating whether the retroactive application of a judicial decree violates Due Process, a critical question is whether the Constitution would prohibit the same result attained by the exercise of the state's legislative power." **To the extent petitioner argues that the Due Process Clause incorporates the specific prohibitions of the *Ex Post Facto* Clause as identified in *Calder*, petitioner misreads *Bouie*.** To be sure, our opinion in *Bouie* does contain some expansive language that is suggestive of the broad interpretation for which petitioner argues. Most prominent is our statement that "[i]f a state legislature is barred by the *Ex Post Facto* Clause from passing . . . a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." This language, however, was dicta.

532 U.S. at 458–59 (citations omitted) (emphasis added). The Court goes on to state:

> Our decision in *Bouie* was rooted firmly in well established notions of due process. Its rationale rested on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct. **And we couched its holding squarely in terms of that established due process right, and not in terms of the ex post facto-related dicta to which petitioner points.**

or should be applied retroactively, is the *ex post facto* clause applicable to the present case?

7. Is there a due process claim applicable to the present matter? More specifically, is there a due process claim regarding the defendants' decision to remove the individuals from the parole docket, especially in light of the Fifth Circuit's statement in *Casterline v. Thaler* that:

> There is no Supreme Court case, however, applying *Rogers* and *Bouie* to judicial interpretations of parole or mandatory supervised release statutes like that involved in the instant case. In other words, there is no clearly established federal law, as determined by the Supreme Court, stating that a retroactive judicial interpretation effecting a change in sentencing, parole, probation, or mandatory supervised release law that disadvantages a prisoner gives rise to a Due Process violation.

494 F. App'x 500, 502 (5th Cir. 2012) (per curiam).

8. Is this a situation where the judicial decision in *Billlard* is being applied retroactively?

9. Are there any objections or opposition to the plaintiffs' claim that a liberty interest in parole eligibility was created through "an expectation or interest created by state laws or polices," and based primarily on the following actions of the State of Louisiana:

> (1) Determining previously "that La. R.S. 15:574.4 mandated a parole eligibility date for armed robbery offenders with offenses dated before August 15, 2008," (2) "draft[ing] a regulation that grants a PED to all armed robbery offenders with offense dates before August 15, 2008," (3) "creat[ing] an expectation of a PED in all armed robbery offenders with offense dates before August 15, 2008," (4) "assign[ing] a PED to all armed robbery offenders with offense dates before August 15, 2008," (5) "provid[ing] the offender with a master record indicating the PED," (6) "provid[ing] full parole hearings several months before the PED," (7) "permit[ing] and grant[ing] re-hearings if denied at the initial hearing," and (8) "actually parol[ing] hundreds of offenders convicted of armed robbery."

---

*Id.* at 459 (emphasis added) (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-355 (1964)).

(Doc. 5-1, p. 16–17).

10. If this Court were to find that a due process/liberty interest had been created, as the plaintiffs assert in their motion, is the court's sole inquiry whether the defendants' decision to remove the plaintiffs from the parole docket and refuse to grant a parole eligibility date was correct under state law, or is there an additional question of deference or level of scrutiny in resolving the claims?

11. What process did the Department of Public Safety and Corrections and the Committee on Parole use in making the decision to remove individuals convicted of armed robbery from the parole docket? Was there an oral or written policy involved?

12. What steps did the Department of Public Safety and Corrections and the Committee on Parole take in order to remove individuals convicted of armed robbery from the parole docket?

Signed in Baton Rouge, Louisiana, on January 10, 2014.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**